**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-0700-WJM

DESERIE ANN ABAD,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE**

---

This is a Social Security Benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Deserie Abad ("Abad") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Abad was not disabled within the meaning of the Social Security Act. This appeal followed.

For the reasons set forth below, the ALJ's decision denying Abad's application for disability insurance benefits is VACATED and this case is REMANDED for further proceedings consistent with this order.

## I. BACKGROUND

Abad was born on May 25, 1960, and was 51 years old on the alleged onset date of October 1, 2011. (Administrative Record ("R.") (ECF No. 13) at 137.) Abad completed ninth grade and worked as a restaurant server from January 1985 until

October 2011. (R. at 282.)

Abad applied for disability insurance benefits on November 27, 2012, with a protective filing date of November 20, 2012. (R. at 244, 277.) Abad claimed that she is disabled due to the following conditions: back and chronic pain, back injury, arthritis, depression, insomnia, and learning disability. (R. at 281.) Her application was denied on June 6, 2013. (R. at 146.) Abad requested and received two hearings in front of an ALJ, Lowell Fortune. (R. at 80.) On September 25, 2014, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process. (R. at 60.)[1]

At step one, the ALJ found that Abad had not engaged in substantial gainful activity since May 17, 2012. (R. at 26.)

At step two, the ALJ found that Abad suffered from the following impairments: fibromyalgia, chronic pain syndrome, lumbar spine disorder, insomnia disorder, learning disorder, anxiety disorder, obesity, and cervical spine disorder. (R. at 62.) The ALJ found each of the above impairments to be medically determinable and severe. (R. at 63.) The ALJ noted that Abad's record "contains references to sleep apnea" but concluded that this condition is not medically determinable and "even if it were, it is a non-severe impairment." (R. at 63.)

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

At step three, the ALJ found that Abad's impairments, while severe, did not meet or medically equal any of the impairments listed in the Social Security regulations. (R. at 63–64.)

Before proceeding to step four, the ALJ assessed Abad's residual functional capacity ("RFC"). The ALJ concluded that Abad has the RFC to perform "light" work as defined by the regulations, except as follows:

> The claimant is able to lift 20 pounds occasionally and 10 pounds frequently. During an 8-hour workday, the claimant is able to stand and/or walk 6+ hours and sit 6+ hours. The claimant is unable to climb ladders, scaffolds, and ropes. The claimant is able to reach overhead frequently with the bilateral upper extremities. The claimant should avoid unprotected heights and dangerous machinery. The claimant is able to understand, remember, and carry out moderately detailed instructions. The claimant should not perform any assembly-line work (because of limitations in persistence, pace, and stress). The claimant cannot engage in work requiring intense, sustained concentration. The claimant should not perform any work above the following GED levels: reasoning, 3; math, 2; and language, 3.

(R. at 65.)

At step four the ALJ found that Abad was capable of performing past relevant work as a "waitress and bartender." (R. at 73.) Therefore, the ALJ did not proceed to step five.

Accordingly, the ALJ found that Abad was not entitled to disability insurance benefits. (R. at 74.) Abad appealed to the Social Security Appeals Council (R. at 51), which denied review (R. at 1). Abad then timely filed this action seeking review of the ALJ's September 25, 2014 decision. (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

Abad argues that the ALJ erred in: (1) not calling a medical expert to opine on the issue of medical equivalence to the Listings; (2) not properly evaluating and weighing the medical opinion evidence of Abad's treating physician; and (3) not basing his credibility finding in substantial evidence.  Abad also raises a fourth issue on appeal, arguing that the Appeals Council erred in failing to reverse and remand the claim to the ALJ in light of the new and material evidence with which it was presented.  The Court will address each of Abad's arguments in turn.

## A. Expert Opinion on Medical Equivalence

Abad argues that the ALJ "failed to analyze Abad's fibromyalgia as required by Social Security Ruling ['SSR'] 12-2p" and failed to consult a state agency medical expert to opine on the issue of medical equivalence of this impairment to the Listings, pursuant to SSR 96-6p. (ECF No. 16 at 17.) Abad contends that her physical impairments were evaluated only by a psychologist, Gayle Frommelt, Ph.D., and that "a psychologist is not a medical doctor." (*Id*. at 18.) Abad concludes that "there is, therefore, no assessment of medical equivalence by a medical doctor regarding fibromyalgia, and there is therefore no basis for the ALJ's finding that Abad's fibromyalgia does not medically equal any Listing." (*Id*.)

The Commissioner responds that this argument is "inaccurate because Dr. Susman [M.D.] reviewed the record, opining that [Abad] could perform light work." (ECF No. 17 at 8.) The Commissioner contends that "implicit in this determination was the doctor's finding that [Abad]'s impairments, including fibromyalgia, did not meet or medically equal a listed impairment." (*Id.*) Abad replies that Dr. Susman's report "is simply an assessment of [RFC], not one regarding medical equivalence under the Listings" and that medical equivalence would have to be evaluated by a rheumatologist, "not an orthopedic surgeon such as Dr. Susman." (ECF No. 20 at 9.)[2]

---

[2] Abad also argues under 96-6p that the ALJ should have received an updated medical opinion because Dr. Susman's opinion on equivalence "was stale by the time of the ALJ's decision a year later." (ECF No. 20 at 10.) Abad asserts that there was "significant new evidence in the file that under SSR 96-6p may have changed Dr. Susman's 'implicit' opinion, to the extent he gave one, on the Listing issue." (*Id*. at 11.)

SSR 96-6p provides that an ALJ "must obtain an updated medical opinion from a medical expert . . . . when additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or

SSR 12-2p provides guidance on how the agency develops evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how this impairment is subsequently evaluated in disability claims. *See* SSR 12-2p, 77 Fed. Reg. 43640 (July 25, 2012). In that ruling the agency states that "we may request evidence from other acceptable medical sources, such as psychologists, both to determine whether the person has another [medical determinable impairment] and to evaluate the severity and functional effects of [fibromyalgia]." *Id*. at 43643. Once the agency has established that "a person has a medically determinable impairment of fibromyalgia, we will consider it in the sequential evaluation process to determine whether the person is disabled." *Id*. As noted earlier, "at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation." *Wall*, 561 F.3d at 1052. However, SSR 12-2p notes that "fibromyalgia cannot meet a listing in appendix 1 because fibromyalgia is not a listed impairment. At step three, therefore, we determined whether fibromyalgia equals a listing." SSR 12-2p, 77 Fed. Reg. at 43644.

This leads the Court to examine SSR 96-6p, which requires the agency to obtain the opinion of a physician or psychologist on the issue of medical equivalence. *See* SSR 96-6p, 61 Fed. Reg. 34466 (July 2, 1996). SSR 96-6p explains that, although the

---

psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 61 Fed. Reg. 34468 (July 2, 1996). SSR 96-6p does not specify whether and where the ALJ must express, in his opinion, that new evidence may have changed the state agency consultant's medical equivalence opinion. *See Id*. at 34466–34468. In fact, the ALJ here never expressed an opinion that he thought the evidence demanded an updated opinion as to medical equivalence. (*See* R. at 63.) Accordingly, the Court finds no reversible error as to this issue.

6

ALJ is not bound by the medical opinion, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." *Id*. at 34468. As Abad correctly notes, SSR 96-6p can be satisfied by the "signature of a state agency medical or psychological consultant on a SSA-831-U5 (Disability Determination and Transmittal Form)." *Id*.; *see also Thomas v. Colvin*, 2016 WL 1604711, at *3 (D. Colo. April 22, 2016).

Dr. Frommelt, a psychologist, signed the Disability Determination and Transmittal Form on June 6, 2013 (R. at 136), and her evaluation considered Abad's impairments due to fibromyalgia (R. at 142). Abad argues that Dr. Frommelt was not qualified to opine on the issue of medical equivalence. However, pursuant to 96-6p, a psychologist's opinion on the issue of equivalence, submitted via the transmittal form, is sufficient. Thus, the Court rejects Abad's argument and finds no reversible error as to this issue.

### B. Weighing of Medical Opinions

Abad contends that the ALJ erred in failing to give controlling weight to her treating physician's opinions, and erred in giving weight to the non-treating physicians' opinions without a basis in the evidence. (ECF No. 16 at 11.) "An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In determining what weight to give a medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R. § 404.1527. *See id.* Those

factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

The ALJ need not explicitly discuss each individual factor. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). Nevertheless, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301.

The Court will discuss the ALJ's weighing of Plaintiff's treating and non-treating physicians' opinions in turn below.

### 1. Weight of Treating Physician's Medical Opinions

The ALJ gave "less weight" to the opinions of Dr. Krotchko, M.D., Abad's treating physician. (R. at 71–73.) Abad argues that "in making this assessment, [the ALJ] failed to follow the required two-step process for the evaluation of treating source opinions." (ECF No. 16 at 12.) Additionally, Abad argues that the "ALJ's assessment of Dr. Krotchko's opinion is unclear in terms of what he means by giving it 'little weight', does not use the appropriate regulatory standard found in 20 C.F.R. § 404.1527, and is primarily generic boilerplate." (*Id*. at 14.)

The opinion of a treating physician is generally "entitled to great weight because

8

it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). However, an ALJ may disregard that opinion if it is contradicted by other medical evidence, or otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 F. App'x 757, 759–60 (10th Cir. 2009). The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (citing SSR 96-2p, 61 Fed. Reg. 34489 (July 2, 1996)).

A finding that a treating physician's opinion does not meet the test for controlling weight does "not [mean] that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 96-2p, 61 Fed. Reg. at 34491.

The ALJ reviewed Dr. Krotchko's 2013 and 2014 opinions regarding Abad's "chronic musculoskeletal pain" (R. at 554) and his choice to limit her to sedentary work with no "other limitations on the ability to perform work 8 hours per day, 5 days per week" (R. at 562–63). The ALJ noted that Dr. Krotchko had been Abad's treating physician and that she "had been under his care for multiple medical problems." (R. at 70.) However, the ALJ also considered the opinions of non-treating sources including "State and Regional Agency medical and psychological consultants, Consultative

Examiners (CE), and Medical Experts (ME)." (R. at 69.) The ALJ noted that these medical sources provided opinions about Abad's RFC in which her "limitations would not preclude the performance of substantial gainful activity" in contrast to Dr. Krotchko's "opinions about the claimant's functional capacity." (R. at 68–69.) Thus, the ALJ determined that Dr. Krotchko's medical opinions were not entitled to "controlling weight" because they were not "consistent" with "the other substantial evidence in the record." (R. at 69.)

Next, the ALJ addressed the relative weight that should be given to Dr. Krotchko's medical opinions. (R. at 71.) The ALJ determined that his opinions should be afforded "less weight" in comparison to the other medical source opinions in the record for the following reasons: (1) as a treating source, Dr. Krotchko "is not an expert in the evaluation of SSA disability claims" and "[b]ecause of this lack of knowledge and experience in applying SSA disability regulatory and evidentiary requirements," his opinion is deserving of "less weight"; (2) Dr. Krotchko had less familiarity with other medical information in Abad's record, particularly considering the lack of evidence that Dr. Krotchko reviewed any medical records other than his own; (3) Dr. Krotchko's opinions "are less consistent with the longitudinal record" and "are not supported by the relevant evidence to the same degree as the [other] medical source opinions"; and (4) Dr. Krotchko's reports appear to "simply accept at face value" the "statements made and symptoms reported by the claimant." (R. at 71–72.)

The Court finds that the ALJ properly considered the factors listed in 20 C.F.R. § 404.1527(c) in evaluating Dr. Krotchko's medical opinions, which included the fact that: (1) he was Abad's treating physician; (2) his opinion was less consistent with the

longitudinal record; (3) his lack of familiarity with other medical information in Abad's record; and (4) that his reports appear based on Abad's subjective statements about her symptoms. Because "more than a scintilla" of evidence exists to support the ALJ's evaluation of Dr. Krotchko's opinions, and that evidence was not overwhelmed by contrary evidence, the Court finds that the ALJ's analysis was supported by substantial evidence in the record. *See Lax*, 489 F.3d at 1084. Therefore, the Court finds no error in the ALJ's weighing of Dr. Krotchko's medical opinions and his determination that they should not receive controlling weight.

### 2.   Weight of Non-Treating Physicians' Medical Opinions

Since the ALJ determined that Dr. Krotchko's opinions were "not consistent with the other substantial evidence in the record" (R. at 69), the ALJ had to examine the non-treating physicians' reports to see if they outweigh Dr. Krotchko's reports. *See Hamlin*, 365 F.3d at 1215 ("[W]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report"). "When considering the weight of non-treating sources, the ALJ must determine the appropriate weight given to the source by looking to the factors that apply to all medical opinions." *Retana v. Astrue*, 2012 WL 1079229, at *4 (D. Colo. Mar. 30, 2012). "If an ALJ intends to rely on a non-treating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin*, 365 F.3d at 1215.

The ALJ reviewed the medical opinions of Gayle Frommelt, Ph.D. (state agency psychological consultant), Nancy Cutter, M.D. (consultative examiner-physical), M. Susman, M.D. (state agency orthopedic consultant), and Aimee Henley, Ph.D.

11

(consultative examiner-mental). (R. at 69–70.) The ALJ gave these opinions "more weight" for the following reasons: (1) "the depth of understanding the medical source has of SSA disability programs"; (2) these opinions "are more consistent with the longitudinal record"; (3) "these medical sources presented more relevant supporting medical evidence, and provided more satisfactory supporting explanations"; and (4) these medical sources are specialists. (R. at 70–72.) Again, the Court finds that the ALJ applied the correct legal standard in weighing the non-treating source opinions and properly considered many of the specific factors listed in 20 C.F.R. § 404.1527. Accordingly, the Court finds no error as to this issue as well.

**C.    Credibility of Abad's Testimony**

Abad argues that the ALJ failed to base his findings regarding Abad's credibility on substantial evidence. (ECF No. 16 at 20.)

"Credibility determinations are peculiarly the province of the finder of fact, and [this Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). An ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. 34484 (July 2, 1996). Abad cites *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), for the proposition that the ALJ must cite the specific relevant evidence he relies upon in regard to the credibility of Abad's testimony. (ECF No. 16 at 20.)

Here, the ALJ found Abad's statements concerning her symptoms to be "not fully credible" for four reasons. (R. at 65.) First, the ALJ determined that Abad's "actual conduct is not consistent with [her] own assertions." (R. at 66.) The record evidence shows that Abad was sometimes able to care for her niece, was able to prepare her own meals, do household chores, travel, shop in stores, and care for her own financial affairs. (R. at 293–296, 425–426.) Based on this record, the ALJ found that Abad's activities of daily living "appear to be inconsistent with [her] assertion of being unable to perform any kind of work." (R. at 66.) Another inconsistency the ALJ noted involves Abad's alleged inability to concentrate. (*Id.*) During the first hearing, Abad testified that she "can't concentrate" and that it affects her ability to read and comprehend. (R. at 104.) The ALJ stated in his opinion that he "observed [Abad] throughout the hearing, and she did not demonstrate or manifest any difficulty concentrating during the hearing." (R. at 66.) The Court is skeptical as to whether Abad's ability to concentrate through a relatively brief hearing is probative of her ability to concentrate generally, but the Court was not present and cannot substitute its judgment for that of the ALJ in this respect. The Court therefore finds that the ALJ properly cited evidence in the record to support this factor.

Second, the ALJ found that Abad "has given evidence that is contradicted by or inconsistent with other evidence." The record evidence shows that Abad testified inconsistently during the hearing regarding medication compliance, acknowledging that she has always taken all medications as prescribed, but that "there are some days, I take more, if I can't sleep. There are some days I take more pain pills. If I'm in pain, I take more pain pills." (R. at 101.) The Court finds that medication compliance,

13

specifically whether one is following a treatment plan as advised, to be proper evidence the ALJ could consider in making a credibility determination. SSR 96-7p, 61 Fed. Reg. at 34487.

However, the remaining reasons cited by the ALJ appear to be inappropriate under this factor. The ALJ cited Abad's inconsistent testimony regarding what she perceives to be her "worst problem." (R. at 85, 100.) The ALJ periodically asked Abad throughout the hearing what her worst problem was, and Abad responded differently each time: "standing too long," then "pain in her neck," and lastly "insomnia." (R. at 85, 99.) The Court agrees with Abad that "this type of 'gotcha' cross examination by an ALJ is inappropriate in a non-adversarial Social Security disability administrative hearing." (ECF No. 16 at 24.) The Court also finds that the ALJ erroneously supported this factor with evidence of Abad's inconsistent statements "about seeing things—*i.e.* visual hallucinations." (R. at 67.) The ALJ first noted that, during the physical consultative examination, Abad stated that she sees things, and the ALJ then contrasted this with her statements during the mental consultative examination in which she "did not say anything about seeing things." (R. at 67.) The record evidence indicates that during the second exam her "thought content was negative for . . . perceptual disturbances, or delusions." (R. at 557.) However, this report does not indicate whether Abad was ever asked during the second exam if she has visual hallucinations. The Court finds it inappropriate, in this context, for the ALJ to take Abad to task for failing to mention during the second exam something about which she was never asked during that procedure. As a consequence the Court holds this to be improper evidence upon which the ALJ can support a finding that Abad's evidence is

inconsistent with other evidence in the record.

Third, the ALJ found that Abad "has given evidence in which facts or symptoms have been exaggerated or magnified." (R. at 67.) The ALJ found that Abad "overstated or magnified the amount of time she is unable to get out of bed." (R. at 67.) During the first hearing Abad testified that she does not "get out of bed maybe two to four times a week" and that she has notified her treating physician of this. (R. at 113.) The ALJ determined that this statement was exaggerated because he could not find any reports from her treating physician referencing "these medically remarkable health events." (R. at 67.) The Court finds that the record evidence does not support this finding, as it could easily be the case that Abad had in fact told her treating physician, but that her physician simply chose not to, or merely forgot to, memorialize her statements in his written clinical notes.

Another example of symptom magnification the ALJ references involves "bizarre complaints about physical problems. For example, during a recent visit to an emergency room, the claimant complained that she had pain not only in her neck and ankle, but also at the base of all of her fingernails." (R. at 67.) To the extent the ALJ based his decision to deny benefits, at least in part, on this statement by Abad, the Court also finds this to be error. SSR 12-2p characterizes fibromyalgia as a "complex medical condition characterized primarily by widespread pain . . . . that may fluctuate in intensity and may not always be present." SSR 12-2p Fed. Reg. at 43641. In fact, the list of somatic symptoms that may be considered in determining whether a patient has fibromyalgia is extensive and expansive—from "cognitive problems" to "change in taste" or "ringing in the ears." *Id*. at 43642.

Fourth, the ALJ discounted Abad's credibility based on a finding that her conduct has been inconsistent and variable over time. (R. at 67.) In contrast to the previous two considerations, the ALJ properly supported this factor by referencing Abad's behavior during the psychological consultative examination. (R. at 68.) The record evidence shows that her "performance on the mental status examination was surprisingly poor in comparison to how she presented during the evaluation. For example, her memory did not seem quite so lacking while discussing her life." (R. at 557.) The evidence supports the ALJ's finding that Abad "presented herself as seemingly cognitively impaired" during one portion of the exam, but represented herself as less impaired during the rest of the exam. (R. at 68.)

Accordingly, the Court finds that the ALJ considered both proper and improper factors when making his credibility determination.

Abad argues that remand is appropriate because when "several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, [a court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination." (ECF No. 16 at 28 (quoting *Bakalarski v. Apfel*, 1997 WL 748653, at *3 (10th Cir. Dec. 3, 1997)).) The Commissioner responds that "to the extent any one of the ALJ's reasons is found to be lacking, remand is not appropriate." (ECF No. 17 at 17 (citing *Pickup v. Colvin*, 606 F. App'x 430, 433–434 (10th Cir. 2015) (affirming the ALJ's credibility determination despite finding two of the five reasons given by the ALJ were not supported by substantial evidence)).)

Given that the Court finds suspect two of the four reasons supporting the factors

cited by the ALJ, and given that the ALJ specifically stated that he "considered the cumulative effect of all such factors," the Court will vacate and remand on this issue. (R. at 68.)

The Court notes, however, that on March 28, 2016, the Commissioner issued a new SSR addressing the evaluation of symptoms in disability claims. SSR 16-3p, 81 Fed. Reg. 14166. The new Ruling supersedes SSR 96-7p by "eliminating the use of the term 'credibility' from our sub-regulatory policy . . . . In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." *Id*. at 14167. ALJs are now instructed to consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and to evaluate whether the statements are consistent with objective medical evidence and other evidence in the record. *Id*. at 14169. In determining whether the individual's symptoms and related limitations are consistent with the evidence in his or her record, the ALJs must explain which symptoms they found consistent or inconsistent and explain how their evaluation of the individual's symptoms led to their conclusion. *Id*. at 14170.

As Abad correctly notes, SSR 16-3p is now binding on all components of the Social Security Administration. (ECF 16 at 20–21.) *See also* 20 C.F.R. § 402.35(b) ("These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted."). Accordingly, on remand, the Court orders the ALJ to assess Abad's subjective statements of her symptoms under the criteria listed under SSR 16-3p.

The Court does not intend by this opinion to suggest the results that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully

consider the evidence and all issues raised anew on remand. *See Kepler*, 68 F.3d at 391–92 ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

### D.     Rejection of New Evidence

Abad presented additional evidence to the Appeals Council ("AC") of her treating physician's opinion regarding her ability to perform work-related activities, as she was allowed to do pursuant to 20 C.F.R. 404.970(b). Under this regulation, the AC "must consider additional evidence offered on administrative review—after which it becomes a part of our record on judicial review—if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). Whether Dr. Krotchko's opinion qualifies as "new, material, and chronologically relevant is a question of law subject to our *de novo* review." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).

Dr. Krotchko's opinion, dated eight months after the ALJ issued his decision, opines that Abad is "able to perform work for only 0–2 hours per day, . . . stand for only 1 hour, walk for only 3 blocks, climb 10 steps, and lift only 5–10 pounds." (ECF No. 16 at 28 (quoting R. at 8).) The AC rejected this evidence, stating that "this new evidence is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits." (R. at 2.)

On appeal, Abad argues "it was error for the [AC] to reject" the evidence because "Dr. Krotchko's report related to Abad's condition before the ALJ['s] decision,

as it concerned the same impairments." (ECF No. 20 at 13; ECF No. 16 at 30.) The Commissioner responds that Dr. Krotchko's opinion was not new and material "and there is nothing in the opinion that indicated it was intended to reflect [Abad]'s functioning prior to the ALJ's decision." (ECF No. 17 at 18.)

The Court agrees with the Commissioner that nowhere in the opinion does it state that his opinion relates to the period before the ALJ's decision. In fact, Dr. Krotchko unambiguously handwrites across the report that "*at this time*, [patient] is fully disabled by her condition." (R. at 8) (emphasis added.) Accordingly, the Court finds that the AC did not err in rejecting the additional evidence.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.

Dated this 5th day of January, 2017.

BY THE COURT:

_____
William J. Martínez
United States District Judge